Our final case this morning is Webb v. FINRA. Mr. McKnight. Good morning. My name is Neil McKnight. I represent the plaintiff's appellants, Nick Webb and Thad Beversdorf. Essentially, this case is about the question of the extent of arbitrable immunity as it applies to sponsoring organizations such as FINRA. Before you get into the merits of the arbitral immunity claim, can I talk about subject matter jurisdiction for a moment? Sure. Yes. Let's start with diversity. I don't see where this case satisfies the amount and controversy requirement. As far as I can tell, you might have suffered $3,000 of damages that had to be paid at the end, and there was a $1,400 fee you paid the organization. But I don't see where you get over the line for the amount and controversy. Actually, this issue was presented by Judge Wood in the district court and specifically requested the plaintiff the issue of whether or not it constituted an amount in excess of $75,000. What else you said on the record was, I was satisfied at the status hearing, but the transcript of the status hearing isn't in the record. It is not, and I can tell the court that at the time I represented to Judge Wood that we believe that the attorney's fees incurred in the prosecution of the arbitration below that was ultimately dismissed exceeded $75,000, as well as costs related to document production as well as retention of experts. Why would the attorney's fees count as part of the amount and controversy in this breach of contract action? Because we believe that we would not have incurred those expenses and had done that if the FINRA had not breached its contract with us with respect to administering the arbitration. But wouldn't that always be true? I mean, what if you go to court because you have a breach of contract claim? You don't get to recover your attorney's fees in that context even if you win. Well, it's not necessarily attorney's fees in the prosecution of the claim against FINRA. Rather, it's more of a consequential damages arising out of the breach of the contract by FINRA in the form of fees that we incurred that we would not have had they had lived up to their… Had they fulfilled their part of the bargain. Yes, that's right. But that goes back to the breach of contract, right? It does. I mean, I will say this. The entire case arises out of a breach of contract action and then a declaratory action on a breach of contract action, which was count two of the complaint. Let me switch for a second then and talk about federal question jurisdiction. What's your theory for the existence of federal question jurisdiction? I don't think there is federal question jurisdiction. I think it entirely arises out of diversity jurisdiction, though I know my opponents disagree. Okay. Well, talk to your opponents about that one. I don't… Well, perhaps supplemental briefing might be helpful on the amount of controversy and perhaps the federal question jurisdiction as well. If that's what the court desires, I'd be glad to do that. We'll let you know at the end. Pardon me? We'll let you know at the end of the… Thank you very much, Judge. Getting back to my original question here, this question is what the extent of what arbitral immunity is. And I think there's an ambiguity and there's certain open questions, particularly in the Seventh Circuit with respect to whether or not the extent to which arbitral immunity applies to sponsoring organizations. And I think what we have to look at in this case is that FINRA is not an arbitrator in this situation. FINRA wasn't a decision maker. FINRA wasn't in the capacity as some courts have compared to as a jury or a judge. FINRA was an administrator of the arbitration itself. We also have to acknowledge that this case involves a private arbitration, meaning it wasn't derived based upon statute or required based upon statute. It was pursuant to a contract and ultimately the parties entered into a contract with FINRA. FINRA promised to do certain things, and it is our position and based upon the allegations of the complaint that they didn't fulfill their promises. The question then is whether or not the complaint as alleged by the plaintiffs in the court below sufficiently stated a cause of action that takes it outside of what we will call the administration of the arbitration process. And we believe it does for two reasons. We believe that the contract itself requires them to do certain things that are outside and apart from the arbitration process. The second is that there's a specific allegation in the complaint that was discussed about the interference in the arbitration. And one of the issues is whether or not as an administrator of the process, FINRA can dive down and get involved in the decision making process of the arbitration itself. And we believe that they did that, and we specifically allege that they did that in two forms. One, by interfering with the discretion of the arbitrators themselves, as well as imposing certain interpretations of the rules under FINRA upon the arbitrators during the course of the arbitration proceeding. That is not an administration process. That is not part of the arbitral process because the arbitral process is we administer, arbitrators decide. And in fact, in the briefs, FINRA specifically says, hey, the interpretation of the rules are left solely to the arbitrators. And the interpretation of what to do and the discretion is solely left to the arbitrators. And the minute that FINRA imposes those what I'll call interpretations, those decisions on the arbitrators, they are then interfering. And we do not get the benefit of our bargain of having an impartial arbitrator. In fact, unlike many cases where you can challenge an arbitration award, we can't challenge that decision because they've interfered. And so one of the issues also presented in the case is that there is no award here. The claim was withdrawn. No decision was made because it became apparent on the face that FINRA was not fulfilling its obligations and it was interfering with the arbitration. And so under those circumstances, we believed that the best course was to proceed in action against FINRA. I think the primary question that is raised by this appeal is whether or not the complaint as stated has a cause of action or has at least inferences to a cause of action that state a breach of contract and that that conduct is outside the administration process of the arbitration forum or arbitration process itself. And we believe it does for those two reasons. And with that, I'll reserve a little time. Thank you. Police Court Counsel, my name is James Bowen. I represent FINRA in this case. I think I'd like to take up the jurisdictional argument for some of the questions you raised. Again, at the June 7th hearing, plaintiff's counsel did say that the amount in controversy exceeded $75,000 and that it included amounts paid or owed to FINRA as well as attorney's fees incurred. This case had gone on for two and a half years before they withdrew the case. I think that damages, attorney's fees may be damages if the defendant's actions caused the party to suffer damages in another case. There is a way to do that, and I think that's what happened here. So, again, I think there is the amount of controversy is met, diversity is met. As to federal question jurisdiction, we believe there is, although it wasn't necessary to reach it in this case, because of the existence of diversity. As a self-regulating organization registered with the SEC, FINRA conducts arbitrations under rules that are reviewed and approved by the SEC. Section 27 of the Exchange Act vests jurisdiction for claims against SROs such as FINRA, and we think that's the case. There are some decisions from the courts that make that not perfectly clear, but we think that that does exist. Well, the test is the same as the arising under test for 1331, the Supreme Court has said, and that means that you have to satisfy the Grable and Sons test of saying that there is a necessary, actually disputed and substantial federal element to this breach of contract claim that won't disrupt the federal-state balance for the court to assume federal subject matter jurisdiction over it. Right, right, and I think that gets relatively fact-heavy in this case. I think there is the whole impetus until this appeal of their case was attacking the rules, that these rules are inadequate, that FINRA's rules that have been approved by the SEC are inadequate, and not just this case, but in all of these cases. What is the federal question that would have to be resolved there? So FINRA's rules are inadequate, but what is the federal? The federal question is these rules which are given the imprimatur, which are approved, which go through notice and approval by the SEC. So they're inconsistent. So you're saying the federal question is somehow the inconsistency of these federal rules with some provision of the Securities and Exchange Act? They're just unfair? Somehow that these rules don't comport with what's required under the Exchange Act. So, I mean, again, I think diversity, I think, is clear in this case, but I also think there's a very good argument that there's federal question jurisdiction as well. I don't think the plaintiffs seriously dispute that there's immunity, that FINRA has immunity from claims that are intricately related to the arbitration, administration, or acts that are within the scope of the process. This court held that in International Medical Group decision, just exactly that, and they cited with approval similar decisions from the First, Second, Fifth, and Eighth Circuits, which were cited in our brief. There are strong policies that support arbitrable immunity and its application to such organizations. The Second and Eighth Circuit recognized that like judicial and quasi-judicial immunity, arbitrable immunity is necessary to protect the decision-making process from attack by dissatisfied litigants. Those circuits also noted that if a sponsoring organization were not shielded from suit for acts within the arbitral process, liability would simply be shifted from individual arbitrators to those organizations. I guess the problem you've got to confront though, sir, is that your brother indicates that the complaint alleges actions by FINRA that had really nothing to do with the actual act of arbitrating, but really with the way it set up its processes, the way it trained its people, things of that nature. Why would they fall within the scope of arbitrable immunity? Well, there's two things that are alleged. There's two types of supposed breaches that they allege here. One, they allege this whole toolbox thing of rules and things that were wrong. That's what they argued in the district court, and they said that's it. They said it's not that the arbitrator or administrators did anything wrong. That's what they said in their brief. Now, they also alleged in the complaint, I'd say they believe, that they waived this next argument because they didn't raise it with the district court. They said, no, it's just about this toolbox. But what they said now is that they ignored this improper interference claim. Now, again, that's been waived on appeal because it wasn't waived in the district court, but even if it hadn't been waived, it would fail. The interference allegation is at best a threadbare recitation of breach allegations supported by conclusory statements. It's paragraph 36E in their complaint. Also, the claim clearly relates to the administration of the arbitration. The parties try to suggest otherwise, pointing to the Eighth Circuit's decision in Hahn. But in that case, the court barred the claim against NASD based on immunity because it was performing functions within the scope of the arbitration, even if it carried out those functions improperly, is what the court said. And in that case, the allegations included improper communication by an NASD employee with an arbitrator and an NASD employee testifying as a witness. The vague interference claim in our case is similarly within the scope of the arbitration. Now, finally, if there was any substance to the so-called interference claim, it could and should have been raised in a court proceeding to vacate or confirm the award between the real parties in interest, the plaintiffs and their employer. And that is if the plaintiffs hadn't voluntarily withdrawn their claim prematurely. The argument that the Caudill hypothetical is discussed, that this court's decision in that case where there was a hypothetical somehow gives the plaintiffs an opening to pursue a breach of contract claim against FINRA that would otherwise be barred by immunity, has no merit. When the plaintiff in International Medical made the same argument, this court rejected it, stating it missed an important distinction between the hypothetical in Caudill and the circumstances in International Medical. The court explained that the hypothetical claim discussed in Caudill, that a sponsoring organization might be subject to a suit for a refund of an administrative fee when services were never rendered, had nothing to do with their administrative duties. The court suggested that such a refund claim might be stated because it would be entirely without reference to the arbitration. On the other hand, the court noted that the claim in International Medical, which concerned the propriety of going forward with the arbitration when a dispute concerned arbitrarility existed, was integrally related to the administrative task. The same is true here. The claim advanced by the plaintiffs are integrally related to the arbitration. As this court noted in International Medical again, the appropriate remedy is for the wrong party to initiate a claim against the real party in interest. As the district court noted, neither Caudill nor International Medical suggests that the plaintiff can avoid immunity by simply reframing a complaint about the handling of their arbitration as a breach of contract dispute with a sponsoring organization. If you have no questions, Your Honor, I submit this case. And we submit that it should be affirmed. Thank you. Thank you. Mr. McKnight, anything further? Just a couple items. I think it's important to point out, particularly with regard to the federal question jurisdiction, is that if FINRA doesn't feel it can engage in private arbitration, it shouldn't. It shouldn't make the promises. And the question before the court is, do they have any obligations with respect to contract promises they make in a private arbitration, or are they entirely immune based upon what they're saying is arbitral immunity that applies to everything? And clearly, based upon the allegations of the complaint, there are specific allegations based upon conduct that occurred before they entered into the contract and their procedures, and then ultimately a specific allegation in the complaint itself about interfering with the arbitrators, which they've admitted in their brief that that is solely reserved for the arbitrator's discretion and for their decision making. So there's two components to this, as I described before. And the question then before the court is, was sufficient facts pled to raise those questions? And we believe it was, and we believe the court essentially was premature in its decision to dismiss the case and that the district court's decision should be reversed and the case should be remanded for further proceedings. Thank you. All right. Our thanks to both counsel and counsel shall file within two weeks supplemental briefs on the question of subject matter jurisdiction, in particular the amount and controversy aspect of diversity jurisdiction and also federal question jurisdiction. Two weeks. Thank you. That concludes today's calendar. The court is in recess.